**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1582**

---

JONG CHEON LEE,

Plaintiff – Appellee,

v.

AGAPE HEALTH MANAGEMENT, INC.; DONG CHUL CHOI; SUN OK LEE,

Defendants – Appellants.

---

**No. 23-1586**

---

JAE MIN LEE; KYONG SIM CHE; MYEONG SUK CHOI; BO YOUNG LEE; YOON HEE OH; YOON JUNG YIM; SOONKUM PARK; HEESANG KIM; MYOUNG HUI MONTGOMERY,

Plaintiffs – Appellees,

and

HYE YOUNG SON,

Plaintiff,

v.

AGAPE HEALTH MANAGEMENT, INC.; DONG CHUL CHOI; SUN OK LEE

Defendants - Appellants

and

JEONG EUI LEE; HYE HYANG YI; JEONG BOK LEE; TAE KWON OHM

          Defendants.

---

**No. 23-1636**

---

JAE MIN LEE; KYONG SIM CHE; MYEONG SUK CHOI; BO YOUNG LEE; YOON HEE OH; YOON JUNG YIM; SOONKUM PARK; HEESANG KIM; MYOUNG HUI MONTGOMERY,

          Plaintiffs – Appellants,

   and

MICHAEL H. RYU; RYU & RYU, PLC,

          Appellants,

   and

HYE YOUNG SON,

          Plaintiff,

   v.

AGAPE HEALTH MANAGEMENT, INC.; DONG CHUL CHOI; SUN OK LEE,

          Defendants – Appellees,

   and

JEONG EUI LEE; HYE HYANG YI; JEONG BOK LEE; TAE KWON OHM,

          Defendants.

---

**No. 23-1647**

---

JONG CHEON LEE,

2

Plaintiff – Appellant,

and

MICHAEL H. RYU; RYU & RYU, PLC,

Appellants,

v.

AGAPE HEALTH MANAGEMENT, INC.; DONG CHUL CHOI; SUN OK LEE,

Defendants – Appellees.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  William Edward Fitzpatrick, Magistrate Judge.  (1:22-cv-00311-WEF; 1:20-cv-01047-WEF; 1:21-cv-00097-WEF; 1:21-cv-00408-WEF; 1:21-cv-00435-WEF; 1:21-cv-00696-WEF; 1:21-cv-00756-WEF)

---

Argued:  May 10, 2024                                    Decided:  July 29, 2024

---

Before GREGORY and HARRIS, Circuit Judges, and David A. FABER, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

---

Vacated and remanded with instructions by unpublished opinion.  Senior Judge Faber wrote the opinion, in which Judge Gregory and Judge Harris joined.

---

Philip Ben-Zion Leiser, THE LEISER LAW FIRM PLLC, Tysons Corner, Virginia, for Appellants/Cross-Appellees. Michael H. Ryu, RYU & RYU, PLC, Vienna, Virginia, for Appellees/Cross-Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

3

DAVID A. FABER, Senior United States District Judge:

Plaintiffs, eleven former employees of Agape Health Management, Inc., filed suit under the Fair Labor Standards Act against Agape and its officers. After settling their claims and pursuant to the terms of their settlement agreements, plaintiffs applied to the district court for attorney's fees and costs. The court granted some, but not all, of the requested fees and costs. Both sides now appeal the fee awards. For the reasons explained below, we vacate the district court's awards and remand for further proceedings.

I.

Agape Health Management, Inc. ("Agape") provides adult day care and adult home care services. At all relevant times, Sun Ok Lee was the owner, Chairman and Chief Executive Officer of Agape and Dong Chui Choi was its President.

Plaintiffs, who worked as aides at Agape, alleged that Agape, Lee, and Choi violated the Fair Labor Standards Act ("FLSA") by failing to pay the required wage for overtime work. *See* 29 U.S.C. § 207. Beginning in 2020, Plaintiffs, either individually or in combination, filed a series of lawsuits against Agape, Lee, and Choi. Certain plaintiffs later added claims for retaliation and civil conspiracy under Virginia law. Eventually, the court consolidated for pretrial proceedings the claims of ten plaintiffs (*Son* case) and the *Lee* case proceeded on its own.

Prior to trial, all cases settled. The United States Magistrate Judge involved in the settlement efforts approved the settlements. The parties were unable to come to an agreement regarding attorney's fees. Therefore, pursuant to the settlement agreements, the

4

parties agreed to allow the court to determine Plaintiffs' "reasonable attorneys' fees."[1] The

parties consented to having the Magistrate Judge decide this issue.

Plaintiffs' counsel filed two petitions for fees and costs, one in the *Son* case and one

in the *Lee* case. The court held a hearing on the petition on April 28, 2024. JA 967-1002.

In the *Son* case, plaintiffs sought $690,883.82 in fees and $39,047.18 in costs. JA 781.

The court awarded $350,000 in attorney's fees and $39,047.18 in costs. JA 965. In the

*Lee* case, plaintiff sought $34,772.00 in fees and $584.90 in costs. JA 1037. The court

awarded the requested $584.90 in costs but reduced the fees awarded to $30,000.00. JA

1120. Defendants appealed the awards and plaintiffs filed a cross appeal as to the amounts

awarded.

II.

A district court's award of attorney's fees is reviewed for an abuse of discretion and

will only be reversed "if the district court is 'clearly wrong' or has committed an 'error of

law.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Brodziak v. Runyon*,

145 F.3d 194, 196 (4th Cir. 1998)). "It remains important, however, for the district court

to provide a concise but clear explanation of its reasons for the fee award." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 437 (1983). "When an adjustment is requested on the basis of

---

[1] The Settlement Agreements were not made a part of the record on appeal. Nevertheless, the Orders approving the Settlements confirm that the parties agreed to leave the matter of plaintiffs' "reasonable attorney's fees" to the court. These Orders were also not included in the Joint Appendix but we may properly consider those materials in resolving the appeal. *See* Fed. R. App. P. 30(a)(2) ("Parts of the record may be relied on by the court or the parties even though not included in the appendix.").

either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

This court has "stress[ed] the importance of addressing fee requests fully and carefully, so that we may engage in meaningful review." *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015). Therefore, "despite our very deferential review in this area, we do require district courts to set forth clearly findings of fact for fee awards so that we have an adequate basis to review for abuse of discretion." *Id.*; *see also Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) ("We cannot afford effective appellate review unless we have before us the district court's reasons for finding a particular award appropriate."). "A district court facilitates appellate review by making specific findings en route to a fee calculation, and therefore we have reversed when we could not discern whether the district court arrived at its fee award by using the proper factors." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F3d 852, 857 (7th Cir. 2009) (quoted with approval in *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 228 (4th Cir. 2009)).

### III.

Under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and costs of the action." 21 U.S.C. § 216(b). However, the district court here did not rely on the FLSA's mandatory fee-shifting provision to award attorney's fees. Nor is this a case where the parties have agreed that plaintiffs are prevailing parties. *See, e.g., Jackson v.*

6

*Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010) (noting that parties had agreed that plaintiffs were prevailing parties in FLSA suit that was settled).

The district court's power to award attorney's fees in this case arises out of the settlement agreements reached between the parties. The settlement agreements provided that the district court would determine the amount of "reasonable attorneys' fees" to be awarded to plaintiffs in the event the parties could not agree to an amount.

"[C]ourts evaluate attorney's fees under a reasonableness standard." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010) (noting that the reasonableness standard is one Congress and many courts have adopted). Although our cases fleshing out this standard have largely involved statutory fee-shifting, the reasonableness standard is not "limited to the fee-shifting context." *Id.*

In *McAfee v. Boczar*, 738 F.2d 81, 88 (4th Cir. 2013), we summarized the requirements for arriving at a reasonable attorney's fee and outlined a three-step process for doing so. First, a court must "determine the lodestar figure by multiplying the number of reasonable hours expended by a reasonable rate." *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply" the twelve factors adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *Id.* The *Barber* factors[2] are:

---

[2] The *Barber* factors are adopted from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and are sometimes referred to as the *Johnson/Barber* factors. *See Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).

7

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for his work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases.

*Id.* at 88 n.5.

At the second step, "the court must 'subtract fees for hours spent on unsuccessful claims that are unrelated to successful ones.'" *Id.* (quoting *Robinson*, 560 F.3d at 244). "Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244). Although the "lodestar method is not perfect," it has several virtues, including that it is objective "and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010).

In this case, the district court acknowledged that it was required to follow the three-step process. However, at step one, it merely adopted the plaintiffs' lodestar figure without mention or discussion of the *Barber* factors. Nor did the district court address any of the problems noted by defendants regarding plaintiffs' lodestar figure. And, at step two, the court also accepted plaintiffs' figures without explanation. *See* JA 996 ("I will, with respect to Step 1 and Step 2, accept your numbers, Mr. Ryu. I understand that there are concerns that you have regarding block billing and vague and inadequate sort of

8

justifications and maybe little things that were off here and there, but I'm going to accept Mr. Ryu's representation that he carefully and diligently reviewed his hours and kept track of his hours."). The court made no independent attempt to account for, and subtract, work spent on unsuccessful claims. The district court's failure to consider the *Barber* factors and lack of explanation at both Steps 1 and 2 prevents us from conducting "meaningful appellate review."

By way of example, defendants challenged the hourly rates charged by plaintiffs' counsel.[3] However, the district court never addressed the reasonableness of counsel's hourly rates. As we have noted, "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (internal quotation and citation omitted).

> In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

*Grissom*, 549 F.3d at 321 (quoting *Plyler*, 902 F.2d at 277 (internal quotation marks and citations omitted)). Critically, "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of

---

[3] Defendants also argued that the hours billed by plaintiffs were excessive and, therefore, unreasonable. The issue is not, as the district court intimates, whether plaintiffs' counsel kept accurate records. Rather, it is whether those hours were reasonably expended.

course, may include evidence of what the plaintiff's attorney actually charged his client." *Robinson*, 560 F.3d at 244 (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (internal quotation marks and citation omitted)).

In support of their burden to establish the prevailing market rate of attorney's fees in the relevant community where the district court sits (i.e., the Eastern District of Virginia), Plaintiffs offered: (1) attorney billing records; (2) the affidavit of Plaintiffs' counsel Michael Ryu; and (3) a copy of a schedule of prevailing hourly rates for litigation counsel in the Washington, D.C. area, known as the Laffey Matrix, maintained by the United States Attorney's Office for the District of Columbia. Plaintiffs' prevailing-hourly-rate evidence is inadequate to support the award. Critically, Plaintiffs "offered no specific evidence that the hourly rates sought coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which Fourth Circuit case law required him to do." *Grissom*, 549 F.3d at 321; *see also Robinson*, 560 F.3d at 245 (holding that district court abused its discretion by awarding hourly rates requested by plaintiff's counsel in absence of "specific evidence of the prevailing market rates"). "Examples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant

community." *Robinson*, 560 F.3d at 245. Without this type of evidence, plaintiffs have failed to satisfy their burden of providing specific evidence of the prevailing market rate.[4]

Furthermore, the Laffey Matrix is insufficient to carry plaintiffs' burden. *See id.* at 245 ("[T]he Laffey Matrix is not binding upon the United States District Court for the Eastern District of Virginia."); *Grissom*, 549 F.3d at 323 ("Plaintiff has provided no evidence that the Laffey Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in Reston, Virginia, a suburb of Washington, D.C.").[5]

The rates plaintiffs seek may well be reasonable. However, the district court's failure to explain its acceptance of those rates hampers our ability to review their reasonableness. *See Doe v. Kidd*, 656 F. App'x 643, 655 n.2 (4th Cir. 2016) (holding that district court abused its discretion in its determination of hourly rate where it "did not provide any reasons on why . . . rates should be reduced" and it did not "explain how it

---

[4] The district court's failure to address the approximate 30 percent raise lead counsel gave himself over the course of these cases is also a problem. *See Grissom*, 549 F.3d at 323 (holding that prevailing-hourly-rate evidence was insufficient to support attorney's fee award where, among other things, increases in hourly rates charged by counsel exceeded economic inflation for the same time periods).

[5] In their reply brief in support of the fee petitions, plaintiffs argued that the Vienna Metro Matrix should be used instead. *See* JA at 779-80. However, "district courts are not required to follow any particular fee matrix." *Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 961 (4th Cir. 2022). As we have noted, a matrix is a "useful starting point to determine fees, not a required referent." *Newport News Shipbuilding*, 591 F.3d at 229. In this case, consideration of the Vienna Metro Matrix alone would not satisfy plaintiffs' burden to establish the prevailing market rate in an FLSA case as it is just a "starting point."

arrived at its determination with sufficient specificity to permit an appellate court to determine whether the court abused its discretion in the way the analysis was undertaken").

IV.

The fee awards in these cases might well be reasonable. However, the court's failure to meaningfully address the *Barber* factors and its insufficient explanation for the wholesale adoption of plaintiffs' figures at Steps 1 and 2 impedes appellate review. Accordingly, we vacate the awards of attorney's fees and costs and remand to the district court with instructions to reevaluate plaintiffs' fee petitions consistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*